UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KENDALL BROWNE,

                           Plaintiff,

       - against -                     **OPINION & ORDER**

P/O KENNETH T. ANDERSON individually,     No. 23-CV-3173 (CS)
P/O GANESH R. BHAGWANDEEN individually,
P/O DANIEL L. GRAHAM individually, and the
TOWN OF WALLKILL,

                       Defendants.
----------------------------------------------------------------x

<u>Appearances</u>:

Kendall Browne
Brooklyn, New York
*Pro Se Plaintiff*

James A. Randazzo
Drew W. Sumner
Portale Randazzo LLP
White Plains, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

     Before the Court is the motion for summary judgment of police officer Kenneth T.

Anderson, police officer Ganesh R. Bhagwandeen, sergeant Daniel L. Graham, (collectively, the

"Individual Defendants"), and the Town of Wallkill (the "Town," and together with the

Individual Defendants, the "Defendants").  (ECF No. 26.)  For the following reasons,

Defendants' motion is GRANTED.

## I.      **BACKGROUND**

###     A.  **Facts**

The following facts are taken from Defendants' Local Civil Rule ("L.R.") 56.1 Statement and the supporting exhibits, and are undisputed unless otherwise noted.[1]

On January 8, 2023 at 12:45 a.m., Anderson, Bhagwandeen and Graham were dispatched to the JZ Sports Bar in response to a report of a male in the parking lot with a firearm. (ECF No. 28 ("Ds' 56.1 Stmt.") ¶ 9.) The JZ Sports Bar is located within a strip mall on Dolson Avenue in the Town, sharing a parking lot with a stand-alone Mavis Tire store. (*Id.* ¶ 7.) When Anderson arrived at the bar, he spoke with the security guard, Robert Brown, outside in the parking lot, and Brown reported that he witnessed a male with a gun. (*Id.* ¶¶ 10-11.) Brown told Anderson that the "male in question" had left the scene, (*id.* ¶ 12), directing Anderson's attention to a vehicle in the parking lot that was driving away from the area and identifying that vehicle as "the suspect vehicle," (*id.* ¶ 13). Anderson understood "suspect vehicle" to mean the vehicle that the person who reportedly possessed a firearm had entered. (*Id.* ¶ 14.) He then returned to his marked

---

[1] Plaintiff did not file a responsive Rule 56.1 Statement. L.R. 56.1 requires that the party opposing a motion for summary judgment submit a counterstatement responding to the moving party's statement of material facts, indicating which facts are admitted and which the opposing party contends are in dispute and require trial. L.R. 56.1(b). Under the Local Rule, "[i]f the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing L.R. 56.1(c)). (Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations. The Court will send Plaintiff copies of all unreported decisions cited in this Opinion and Order.) *Pro se* litigants are not excused from this requirement. *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011). As Defendants served Plaintiff with the requisite notice pursuant to L.R. 56.2, (*see* ECF No. 30), I have discretion to consider any properly supported facts in Defendants' L.R. 56.1 Statement admitted. *Vance v. Venettozzi*, No. 18-CV-748, 2021 WL 4145705, at *3 (N.D.N.Y. Sept. 13, 2021). But granting Plaintiff special solicitude, I have considered his statements in his complaint, (ECF No. 1 ("Compl.")), and his deposition testimony, (ECF No. 29-2 ("P's Depo.")), in determining whether issues of fact exist, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

police car and followed that vehicle – Plaintiff's blue 2022 Honda Accord Sport – after it left the shared parking lot. (*Id.* ¶¶ 3, 15-16, 28.) About a minute later, Anderson initiated a stop on Dolson Avenue, roughly a half a mile away from the JZ Sports Bar. (*Id.* ¶¶ 16-18.) After Plaintiff pulled over, Anderson approached the driver's side and spoke with him. (*Id.* ¶¶ 19-20.) Bhagwandeen responded to the scene and approached Plaintiff's vehicle from the passenger side. (*Id.* ¶ 21.) Plaintiff asked why Anderson stopped him, and Anderson responded that the officers were "here on a gun call, someone said that it was your car, that's why we are here." (*Id.* ¶ 23.) Anderson then asked Plaintiff to step out of the car, and Plaintiff did so, observing multiple police cars from different agencies – including the Town, the City of Middletown, Orange County, and New York State – on the scene. (*Id.* ¶¶ 24-25, 27.)

Anderson then conducted a pat-down of Plaintiff on the outside of his clothing – without going into his pockets – based on the underlying report of a firearm and Brown's identification of Plaintiff's car as the suspect vehicle. (*Id.* ¶ 28.) During the pat-down, Plaintiff indicated that the officers had the wrong car, stating that "the blue car that y'all looking for went that way" and that he "didn't have nothing to do with that." (*Id.* ¶ 29.) He also stated that his car had been sitting at a gas station on Dolson Avenue less than a mile from the JZ Sports Bar, (*id.* ¶¶ 4-6; *see* ECF No. 29-2 ("P's Depo.") at 22:23-23:2), when the officers "flew past the gas station" and "almost hit [him]" on their way to the JZ Sports Bar, (Ds' 56.1 Stmt. ¶ 30). He also said that when the officers "flew past [him], the other blue car like this [tapping his vehicle], which was smaller, went that way." (*Id.*) One of the nearby officers told Plaintiff that "someone pointed out your car, so they probably just saw the blue car," and after Plaintiff interjected saying, "There was another blue car that went that way," an officer responded that they were "just going off of their information." (*Id.* ¶ 32.)

At some unspecified point during the stop, Anderson placed Plaintiff in handcuffs and told him that the eyewitness was en route for a show-up identification. (*Id.* ¶¶ 34-35.) While Plaintiff remained handcuffed, a non-party officer brought Brown in a marked police car. (*Id.* ¶ 36.) Anderson turned Plaintiff to face the non-party officer's vehicle, (*id.* ¶ 37), after which that officer radioed that the show-up was negative, (*id.* ¶ 38). Immediately after receiving that transmission, Anderson removed the handcuffs from Plaintiff and told him he was free to leave. (*Id.* ¶ 40.) Plaintiff estimated that he was handcuffed for one to three minutes, (*id.* ¶ 41), and the traffic stop lasted roughly ten to fifteen minutes in total, (*id.* ¶¶ 42-43).

Plaintiff testified at his deposition that he had been working on his car at the Valero gas station, (P's Depo. at 22:17-23:8, 24:11-18); that he then left and drove down Dolson Avenue to the Mavis Tire, where he made a U-turn in the parking lot in order to go back the other way down Dolson, (*id.* at 25:5-23, 28:9-19); that at the time he observed the police activity at the JZ Sports Bar, (*id.* at 30:14-31:8); and that he observed another car speeding out of the JZ parking lot as he was going in, (*id.* at 44:17-46:17). In other words, Plaintiff acknowledges that his car was in the parking lot in which Brown identified his car to the officers.

**B. Procedural History**

On April 14, 2023, Plaintiff commenced this lawsuit pursuant to 42 U.S.C. § 1983. (*See* Compl.) He alleges that Anderson and Bhagwandeen violated his Fourth Amendment and New York state law rights by unlawfully detaining him and conducting an unreasonable search and seizure that resulted in a false arrest and false imprisonment. (*See* Compl. ¶¶ 29-38.) He also brings claims for supervisory liability against Graham, (*see id.* ¶¶ 39-42), and municipal liability against the Town for failing to adequately train, monitor and supervise its police officers, (*see id.* ¶¶ 43-48).

Defendants answered on June 12, 2023. (ECF No. 10.) On July 14, 2023, the Court held an initial conference and set a discovery schedule. (*See* Minute Entry dated July 14, 2023.) On December 15, 2023, Defendants filed a pre-motion letter in anticipation of a motion for summary judgment, (ECF No. 24), and Plaintiff filed a response letter on December 29, 2023, (ECF No. 25). On January 3, 2024, the Court held a pre-motion conference, granting Defendants additional time to depose a nonparty witness and setting a briefing schedule on Defendants' motion for summary judgment. (*See* Minute Entry dated Jan. 3, 2024.) The instant motion followed. (*See* ECF No. 26.)

## II.   **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."). "In considering a motion for summary judgment, the Court cannot render credibility assessments, which are reserved for the jury." *Jordan v. Gifford*, No. 19-CV-1628, 2022 WL 3106965, at *21 (D. Conn. Aug. 4, 2022).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing

evidentiary matter is presented." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

In addition, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). But "[a] *pro se* party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002).

## III. <u>DISCUSSION</u>

Plaintiff contends that Anderson and Bhagwandeen violated his Fourth Amendment rights, as well as his rights under New York law, by unlawfully searching and seizing him during the January 8, 2023 stop that culminated in an alleged false arrest and false imprisonment. (*See* Compl. ¶¶ 29-38.) He also asserts supervisory liability with respect to Graham, (*see id.* ¶¶ 39-42), and municipal liability with respect to the Town for failing to adequately train, monitor and supervise its police officers, (*see id.* ¶¶ 43-48). Defendants move for summary judgment on all claims. (*See* ECF No. 26.)

### A. <u>Unlawful Seizure, False Arrest, and False Imprisonment Claims</u>

Defendants argue that Anderson, who was subsequently supported by Bhagwandeen, lawfully stopped Plaintiff because he had probable cause, or at least reasonable suspicion, to conduct an investigatory detention based on Brown's eyewitness report of a male with a firearm and identification of Plaintiff's car as the suspect vehicle in the JZ Sports Bar parking lot. (*See* ECF No. 27 ("Ds' Mem.") at 3-4.) The Court construes Plaintiff's papers "to raise the strongest arguments that they suggest," *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *3 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F. App'x 350 (2d Cir. 2011), and accordingly finds that

Plaintiff argues that Anderson and Bhagwandeen lacked reasonable suspicion or probable cause to stop him on January 8, 2023, thereby violating his Fourth Amendment and New York state law rights to be free of false arrest and false imprisonment, (*see* ECF No. 31 ("P's Opp.") at 1-3).

"New York state and federal law each protect individuals against 'unreasonable searches and seizures.'" *Feliz v. City of N.Y.*, No. 19-CV-6305, 2023 WL 2601111, at *4 (S.D.N.Y. Mar. 22, 2023). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of the Fourth Amendment." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017). Thus, "traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Id.*; *see United States v. Torres*, No. 23-CR-395, 2024 WL 1251186, at *8 (S.D.N.Y. Mar. 22, 2024) ("Pursuant to *Terry v. Ohio*, law enforcement officers may conduct a temporary investigative stop, consistent with the Fourth Amendment, with less than probable cause.").

"Probable cause to arrest requires that the totality of facts and circumstances known to the police permit a person of reasonable caution to conclude that there is a fair probability that the person to be seized has committed or is committing a crime." *United States v. Lefebvre*, 117 F.4th 471, 476 (2d Cir. 2024). Courts assess the totality of the circumstances "based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022). For that determination, the court "considers those facts available to the officer at the time of the arrest and immediately before it," and "[t]he significance of each of these factors may be enhanced or diminished by surrounding

circumstances." *Id.*  Probable cause requires more than a "mere suspicion of wrongdoing" and

focuses "on probabilities, not hard certainties." *Finnegan v. Berben*, No. 20-CV-10231, 2024

WL 1242996, at *14 (S.D.N.Y. Mar. 22, 2024).

"When information is received from a putative victim or an eyewitness, probable cause

exists, unless the circumstances raise doubt as to the person's veracity." *Lefebvre*, 117 F.4th at

476; *see Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).  "[I]information provided by an

identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy,"

and the Second Circuit has "endorsed the proposition that an identified citizen informant is

presumed to be reliable." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  But when a

"witness's 'description could have applied to any number of persons and does not single out the

person arrested, probable cause does not exist.'" *Lefebvre*, 117 F.4th at 476 (quoting *Jenkins v.

City of N.Y.*, 478 F.3d 76, 90 (2d Cir. 2007)).  Probable cause may be determined as a matter of

law "if there is no dispute as to the pertinent events and the knowledge of the officers."

*Finnegan*, 2024 WL 1242996, at *15; *see Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Federal civil rights claims for false arrest and false imprisonment are based on state law.

*See Guan*, 37 F.4th at 804.  New York law does not distinguish between false arrest and false

imprisonment claims.  *See Silas v. City of N.Y.*, No. 18-CV-7122, 2023 WL 5532856, at *6

(E.D.N.Y. Aug. 28, 2023).  Because "[t]he elements of false arrest and false imprisonment

pursuant to Section 1983 and New York law are substantially the same," the analysis is identical.

*Brathwaite v. City of N.Y*, No. 19-CV-9235, 2023 WL 5713189, at *4 (S.D.N.Y. Sept. 5, 2023);

*see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  To prevail on a claim of false arrest or

false imprisonment, a plaintiff must establish the following elements:  "'(1) the defendant

intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Brathwaite*, 2023 WL 5713189, at \*4 (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)).  An arrest is privileged if it is based on probable cause*, see Casiano v. City of N.Y.*, No. 19-CV-3968, 2019 WL 5593018, at \*2 (S.D.N.Y. Oct. 29, 2019), and "the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983," *McCrae v. Town of Brookhaven*, No. 18-CV-7061, 2024 WL 5120016, at \*6 (E.D.N.Y. Dec. 16, 2024); *see Jean v. City of N.Y*, 512 F. App'x 30, 31 (2d Cir. 2013) (summary order) ("[T]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *Feliz*, 2023 WL 2601111, at \*4 ("Probable cause for an arrest defeats a claim for unreasonable search and seizure under both federal and New York state law."); *Brathwaite*, 2023 WL 5713189, at \*5 (to the same effect).

Based on the foregoing principles, the Court concludes that there is no genuine dispute of fact that Anderson had probable cause to stop Plaintiff's vehicle and detain him until the negative show-up identification.  It is undisputed that the security guard at the JZ Sports Bar identified Plaintiff's car as the one in which the individual with the gun had driven off.  That provided Anderson with "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief" that Plaintiff had committed a crime.  *See Panetta*, 460 F.3d at 395-97 (descriptions of suspect based on eyewitness accounts of identified citizen informants "provide[ed] an indicia of reliability" for probable cause to arrest); *Lefebvre*, 117 F.4th at 476 (officer's "prompt confirmation of the [911] report in an in-person interview of the victim" imputed knowledge to officer that established probable cause).

While Plaintiff contends that Defendants "did not have reasonable trustworthy information in order to effectuate a probable cause stop," (P's Opp. at 2), Plaintiff does not point to any evidence suggesting that the officers had reason to doubt Brown's veracity or reliability, or challenging Anderson's knowledge of Brown's information.  Nor is there any evidence in his complaint or deposition testimony to create a dispute of fact on this issue.[2]  While Plaintiff's testimony and video footage from his cellphone indicate that he repeatedly told Defendants that they stopped the wrong car and the wrong person, (*see* P's Depo. at 36:15-37:9, 40:18-41:3; 44:17-45:6; ECF No. 29-3), Defendants had no duty to explore or eliminate Plaintiff's claims of innocence before detaining him pending the show-up, *see Figueroa v. Mazza*, 825 F.3d 89, 102 (2d Cir. 2016) ("The officers were not required to accept Saenz's account on faith.  Rather, they were entitled to weigh her explanation (along with its context[]) . . . against the facts on the other

---

[2] Plaintiff argues that summary judgment should be denied because "discovery has not been complete" and that he "had not been given the opportunity to cross examine the witness Brown that was subpoenaed for by the defendant with regard to deposition."  (P's Opp. at 3.) Fact discovery closed on December 29, 2023, (*see* ECF No. 20), and the Court already provided the parties with additional time to subpoena Brown for a deposition, (*see* Minute Entry dated Jan. 3, 2024).  That Brown failed to appear for his deposition does not create a triable issue of fact, as Plaintiff has not submitted any admissible evidence that disputes Anderson's sworn statements about Brown's identification of Plaintiff's vehicle.  *See Davis v. Gantt*, No. 18-CV-303, 2024 WL 4132372, at *3 (E.D.N.Y. Sept. 10, 2024) ("Although Plaintiff suggests that [the victim] lied about his telephone encounter with Plaintiff, Plaintiff offers no evidence showing that Officer Gantt was made aware of doubts as to the victim's veracity.").  Moreover, Plaintiff failed to respond to Defendants' Rule 56.1 statement.  "Plaintiffs who ignore their obligations under Local Rule 56.1 do so at their own peril:  In the typical case, failure to respond to a Local Rule 56.1 statement results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."  *Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021) (summary order); *see Davis*, 2024 WL 4132372, at *1 n.3 ("Thus, because Plaintiff failed to submit a statement of material facts or a counterstatement in response to Defendants' statement of material facts, the Court deems Defendants' Rule 56.1 statement to be undisputed for purposes of Defendants' motion.").  Given Plaintiff's status as a *pro se* litigant, the Court has exercised its discretion to consider the entire record, including Plaintiff's Complaint and his deposition testimony.  But the Court does not find any record evidence that creates a genuine dispute of material fact.

side of the ledger."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (law enforcement officers are tasked with "apprehend[ing] those suspected of wrongdoing," not engaging in "a weighing of the evidence"). That the Individual Defendants apparently based their decision on mistaken information provided by Brown does not defeat probable cause because it was reasonable to rely on that information under the circumstances. *See Aberra v. City of N.Y.*, No. 21-1992, 2023 WL 221096, at *1 (2d Cir. Jan. 18, 2023) (summary order) ("[E]ven if the witnesses' statements turned out to be inaccurate, probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information."); *Finnegan*, 2024 WL 1242996, at *14 (to the same effect); *Morris v. City of N.Y.*, No. 15-CV-3121, 2017 WL 3588941, at *4 (S.D.N.Y. Aug. 18, 2017) (probable cause existed where officer reasonably relied on information from eyewitness and had no reason to doubt that witness was telling the truth); *Fudge v. Town of Shandaken Police*, No. 09-CV-300, 2010 WL 3258385, at *3 (N.D.N.Y. Aug. 16, 2010) (officers have probable cause even if information used as basis of arrest is mistaken, as long as reliance was reasonable, which it is if officer received information from eyewitness).

Furthermore, to the extent Plaintiff contends that there is an issue of fact because Defendants did not find any firearms on him and stopped the wrong car, (*see* P's Opp. at 2; P's Depo. at 36:15-37:9, 40:18-41:15), probable cause did not dissipate until the negative show-up identification, whereupon Defendants immediately released Plaintiff, (*see* Ds' 56.1 Stmt. ¶¶ 39-40). That dissipation does not defeat the probable cause to stop and detain Plaintiff in the first

place. *See Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d 378, 393 (E.D.N.Y. 2020) ("The only event that caused probable cause to dissipate . . . did not precede the police's having probable cause to pull over the vehicle at the time of the incident."). The question is not whether Plaintiff was in fact the person with the gun, but whether the officers could reasonably have so believed at the time of the stop. *Brace v. Johnson*, No. 22-590, 2023 WL 2027274, at *2 (2d Cir. Feb. 16, 2023) (summary order).

Accordingly, the undisputed evidence shows that Anderson and Bhagwandeen had probable cause to stop and detain Plaintiff until the negative show-up identification. Because probable cause is a complete defense to Plaintiff's claims for unlawful seizure, false arrest and false imprisonment, *see Brathwaite*, 2023 WL 5713189, at *5; *Feliz*, 2023 WL 2601111, at *4, Anderson and Bhagwandeen are entitled to summary judgment on those claims, and those claims are dismissed, *see Silas*, 2023 WL 5532856, at *7 (collecting cases).[3]

---

[3] Even if Anderson and Bhagwandeen did not have probable cause, they at least had arguable probable cause, and therefore the Individual Defendants are entitled to qualified immunity. (*See* Ds' Mem. at 9-10.) When accused of making a false arrest, an officer is entitled to qualified immunity on a § 1983 claim if there was arguable probable cause at the time of the arrest. *Triolo v. Nassau Cnty.*, 24 F.4th 98, 107 (2d Cir. 2022). "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa*, 825 F.3d at 100. "Put another way, an arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Id.*; *see also Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law."). On this record, which I construe in the light most favorable to Plaintiff, "it is not clear that *no* reasonable officer could have believed that probable cause existed" to stop and detain Plaintiff. *See Triolo*, 24 F.4th at 108 (emphasis in original); *Figueroa*, 825 F.3d at 100. Accordingly, the Individual Defendants are entitled to qualified immunity with respect to Plaintiff's § 1983 unlawful seizure and false arrest claims.

Moreover, even if the Individual Defendants did not have probable cause or arguable probable cause, they at least had reasonable suspicion justifying a *Terry* stop. "Reasonable

**B. <u>Unlawful Search Claim</u>**

Defendants also seek summary judgment on Plaintiff's claim that Anderson unlawfully

searched him during the traffic stop when Anderson conducted a pat-down of Plaintiff's exterior

---

suspicion" is a lower standard than probable cause. *See United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (*per curiam*) ("While a *Terry* stop requires only reasonable suspicion, an arrest requires the heightened standard of probable cause."); *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022) ("[R]easonable suspicion demands even less than is necessary for probable cause."). It requires only "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Navarette v. California,* 572 U.S. 393, 396 (2014); *see Terry v. Ohio*, 392 U.S. 1, 21 (1968) (requiring "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). Brown's identification of the vehicle meets that standard. *See Patterson*, 25 F.4th at 129, 136-39 (report from identified victim that individuals in black Camaro had threatened her with a gun provided reasonable suspicion to stop a Camaro in the area and investigate the car's occupants); *Hawkins*, 37 F.4th at 858-59 (eyewitness hearing gunshot and identifying defendants from suspected area of the shot supported reasonable suspicion to stop and frisk); *United States v. Daniel*, 887 F.3d 350, 355 (8th Cir. 2018) (reasonable suspicion to stop a car based on "the temporal and geographic proximity of the car to the scene of the crime, the matching description of the vehicle, and the time of the stop").

And on the undisputed facts, the encounter did not ripen into an arrest. In making that determination, courts "consider the amount of force used by the police, the need for such force, the extent to which an individual's freedom of movement was restrained and, in particular, such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Anderson*, No. 24-CR-9, 2024 WL 2784332, at *4 (S.D.N.Y. May 28, 2024), *reconsideration denied*, 2024 WL 3461882 (S.D.N.Y. July 18, 2024). Based on the record, including the videos of the incident, while a number of officers were milling about, only two approached the car, no guns were drawn, and no force was used. While Plaintiff was cuffed for one to three minutes, (P's Depo. at 48:10-15), that is a reasonable precaution when the suspicion is that the individual is armed, *see, e.g.*, *United States v. Monroe*, No. 08-CR-609, 2009 WL 3614521, at *8 (E.D.N.Y. Nov. 2, 2009) (reasonable belief that subject was carrying concealed weapon entitled officers to "take necessary measures to neutralize the threat without converting a reasonable stop into a *de facto* arrest"), and the entire encounter lasted only ten to fifteen minutes, (P's Depo. at 49:13-20), *see Brace*, 2023 WL 2027274, at *2 (stops of nine to twenty-two minutes reasonable) (collecting cases). These circumstances cannot reasonably be equated with a *de facto* arrest. *Compare Patterson*, 25 F.4th at 144-46 (no *de facto* arrest where officers outnumbered suspects, suspects' car was partially blocked, orders to exit vehicle were shouted and blared through loudspeaker, and numerous weapons pointed at car, in light of suspicion that suspects had menaced others with a gun shortly before).

clothing.  (*See* Ds' Mem. at 10-11.)  The Supreme Court and the Second Circuit have recognized

that "vehicle stops, particularly those investigating criminal activity, are especially fraught with

danger, both for police officers and individuals."  *Patterson*, 25 F.4th at 143-44.  During a *Terry*

stop, "an officer may conduct a pat-down frisk which consists of a carefully limited search of the

outer clothing in an attempt to discover weapons" that could be used to assault the officer.

*United States v. McDow*, 206 F. Supp. 3d 829, 850 (S.D.N.Y. 2016); *see Terry*, 392 U.S. at 30.

An officer may perform a limited pat-down if "the officer reasonably believes that the detained

individual might be armed and dangerous," *Holeman v. City of New London*, 425 F.3d 184, 191

(2d Cir. 2005), and "regardless of whether [the officer] has probable cause to arrest the

individual for a crime," *Terry*, 392 U.S. at 27.  The goal of the pat-down is to help officers

determine whether a suspect has a weapon that may be used to harm either the officers or other

bystanders – not to discover evidence.  *See United States v. Weaver*, 9 F.4th 129, 140 (2d Cir.

2021) (*en banc*).  "In brief, a constitutional frisk based on reasonable suspicion allows an officer

to pursue his investigation without fear of violence."  *Id.*

　　　　As discussed above, Anderson had probable cause – a standard more demanding than

reasonable suspicion – to stop Plaintiff's car as occupied by the individual who displayed a gun

at a bar in the early morning hours.  Considering the totality of the circumstances, Anderson

ordering Plaintiff to step out of the vehicle and performing a pat-down of Plaintiff's outer clothes

was justified.  *See Weaver*, 9 F.4th at 149 ("[T]he only question for Fourth Amendment purposes

is whether the officer's basis for thinking that the suspect might be carrying a weapon rises to the

level of reasonable suspicion."); *Patterson*, 25 F.4th at 143 (officers conducting a traffic stop of

Camaro while investigating a report of menacing with a gun provided "an articulable, reasonable

basis to suspect that the Camaro's occupants might be armed and dangerous").  Plaintiff argues

15

that the pat down did not reveal any weapons and thereby shows that Anderson did not have a reasonable suspicion that Plaintiff could be armed and dangerous. (*See* P's Opp. at 2.) But this argument is misplaced because the Court must "examine the facts that *preceded* the frisk." *Weaver*, 9 F.4th at 140 (emphasis added). That Anderson ultimately found no weapons after the frisk has no bearing on his probable cause, let alone reasonable suspicion, to pat down Plaintiff out of a reasonable belief that he might be armed and dangerous. *Cf. Harrison*, 498 F. Supp. 3d at 393.

Accordingly, Anderson is entitled to summary judgment on Plaintiff's claim for unlawful search, and that claim is dismissed.

### C. Supervisory Liability

Next, Defendants argue that Graham is entitled to summary judgment on all supervisory liability claims because Plaintiff has not proven an underlying constitutional violation. (*See* Ds' Mem. at 11.) They are correct. "[T]here's no special rule of liability for supervisors," and "[t]he violation must be established against the supervisory official *directly*." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added). Graham's personal conduct at the scene – which appears to have been inactive – does not give rise to liability, and even before *Tangreti*, a claim for supervisory liability under § 1983 would not lie where there has been no underlying constitutional deprivation. *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999); *see Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) (no supervisory liability absent underlying constitutional violation); *Maldonado v. Town of Greenburgh*, No. 18-CV-11077, 2024 WL 4336771, at *18 n.22 (S.D.N.Y. Sept. 26, 2024) ("As explained *supra*, there was no violation of [Plaintiff's] rights . . . . Accordingly, there can be no liability for [supervisor] to the extent the

other Defendants were under his control.").  As there was no constitutional violation from the stop and search, Plaintiff's claims against Graham are dismissed.

### D.  Municipal Liability

Likewise, Defendants move for summary judgment on Plaintiff's claims against the Town, arguing, among other things, that there is no municipal liability because Plaintiff cannot demonstrate any underlying constitutional violation.  (*See* Ds' Mem. at 11.)  They are again correct.  *See Haslinger v. Westchester Cnty.*, No. 22-131, 2023 WL 219198, at *1 (2d Cir. Jan. 18, 2023) (summary order) ("[T]here can be no municipal liability where there is no underlying constitutional violation."); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (to the same effect); *Morris*, 2017 WL 3588941, at *5 ("[S]ince a municipality cannot be found liable for causing a constitutional violation where none occurred, the existence of probable cause is fatal to [Plaintiff's] claim against the [Town] as well.").  Therefore, Plaintiff's *Monell* claims against the Town are dismissed.[4]

### E.  State Law Claims

"[T]he traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state-law claims where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise

---

[4] I thus need not address the parties' remaining arguments regarding *Monell* liability.  But I note that Plaintiff submitted no admissible evidence supporting his *Monell* claim under a theory of inadequate training, monitoring and supervision.

17

supplemental jurisdiction over any state law claims Plaintiff may have intended to assert, and they are dismissed without prejudice.

* * *

I understand why Plaintiff is distressed that he was pulled over and handcuffed when he had not done anything wrong. But there is no evidence that the officers' mistake was anything other than innocent, and an innocent mistake does not rise to the level of a constitutional violation.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The federal claims are dismissed with prejudice, and the state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 26), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: January 6, 2025
      White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.

18